IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HARRY JUNIOR WILLIAMS,

    Petitioner,

v.                                                   Civil Action No. 3:09cv66

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Harry Junior Williams, a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254.[1] Williams challenges the revocation of his parole, the Virginia Parole Board's ("VPB") continuing denial of his release on parole, and the VPB's parole policy. (Pet. 6 & Br. Supp. Pet. ¶¶ 16-39.) (Docket No. 1.) Williams presents three claims,[2] which the Court restates as follows:

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] Williams's Petition alleges only one ground for relief. (*See* Pet. 6.) Respondent has characterized Williams's allegations as three claims. (*See* Resp't's Mem. Supp. Mot. Dismiss ("Resp't's Mem."), ¶ 2.) (Docket No. 9.) The Court agrees that Williams raises three issues.

| | |
|---|---|
| Claim 1(a) | The VPB improperly revoked Williams's parole; |
| Claim 1(b) | The VPB improperly continues to deny Williams's release on parole in violation of the Due Process Clause;[3] and, |
| Claim 1(c) | The VPB has a policy of denying discretionary release on parole to former death row inmates, which violates the Ex Post Facto Clause.[4] |

(Br. Supp. Pet. ¶¶ 16-39.)

Respondent filed a Rule 5 Answer (Docket No. 7) and Motion to Dismiss[5] (Docket No. 8), providing Williams with appropriate *Roseboro*[6] notice (Docket No. 10). Respondent contends that the statute of limitations bars Claim 1(a). (Resp't's Mem. ¶ 7.) Respondent contends that Claims 1(b) and 1(c) lack merit. (Resp't's Mem. ¶¶ 10-19.) Williams responded to the motion to dismiss (Docket No. 13), and the matter is ripe for adjudication. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254.

## I. Procedural Background[7]

On February 23, 1967, the Circuit Court for the County of Pittsylvania, Virginia ("Circuit Court") convicted Williams of first degree murder and three counts of malicious shooting. (Pet. 1.) The Circuit Court sentenced Williams to death plus sixty years. (Pet. 1.) Williams pursued a direct appeal to the Supreme Court of Virginia, which affirmed the judgment of the Circuit

---

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[4] "No . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

[5] Because Respondent submitted the affidavit of Helen Fahey in support of its motion to dismiss, the Court will treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

[6] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[7] The Court recites the procedural background only as it relates to Claim 1(a).

Court. (Pet. 3.) The Supreme Court of the United States denied Williams's petition for certiorari. (Pet. 3-4.)

On March 9, 1973, Williams's sentence was commuted to 140 years. (Pet. 1.) Thereafter, in August of 1999, the VPB granted Williams discretionary parole and placed him in a residential program at the Salvation Army Residential Center ("SARC"). (Pet'r's Br. Supp. Pet. ¶ 5.) (Docket No. 1.) As a result of a parole violation, the VPB revoked Williams's parole on June 19, 2000. (Resp't's Mem. ¶ 9; Resp't's Mem. Ex. A, Fahey Aff. ("Fahey Aff."), ¶ 5 & Encl. D, at 4.)

Respondent concedes that Williams has exhausted his state remedies by petitioning the Supreme Court of Virginia for habeas corpus relief.[8] (Resp't's Mem. ¶¶ 3-6.) On January 30, 2009, nearly nine years after the VPB revoked his parole, Williams filed the instant Petition.[9]

## II. Factual Background

On December 10, 1999, while residing at the SARC, Williams tested positive for alcohol. (Pet'r's Br. Supp. Pet. ¶ 6.) Williams's probation officer reported that Williams had blown .08 and .10 on two breathalyzer tests. (Pet. Ex. 1, Results of Preliminary Hearing ("Hearing

---

[8] Williams twice petitioned the Supreme Court of Virginia for habeas corpus relief. The Supreme Court of Virginia denied Williams's first petition as frivolous. (Resp't's Mem. Ex. A, *Williams v. Dir., Dep't of Corr.*, No. 040443 (Va. Sup. Ct. May 25, 2004).) The Supreme Court of Virginia summarily denied Williams's second state habeas petition. (Resp't's Mem. Ex. A, *Williams v. Johnson*, No. 081805 (Va. Sup. Ct. Oct. 31, 2008).)

[9] The Court considers a prisoner's habeas corpus petition filed on the date he delivers his petition to prison authorities for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Williams did not execute the portion of the Petition identifying the date he placed the Petition in the prison mailing system. The Clerk's Office stamped the Petition "received" on January 30, 2009.

Results"), at 1.) Williams denied drinking any alcohol, stating instead that he tested positive as a result of eating a serving of rum cake. (Pet'r's Br. Supp. Pet. ¶¶ 6-7.)

Williams ultimately admitted the probation violation. (Pet'r's Br. Supp. Pet. ¶ 9.) Because the SARC prohibited all alcohol consumption, Williams was removed from the program. (Pet'r's Br. Supp. Pet. ¶ 35.) Williams believed, and his probation officer advised him that, after he admitted the violation, he would be eligible for reentry into the SARC program at the conclusion of a sixty-day waiting period. (Pet'r's Br. Supp. Pet. ¶ 8.) At the end of the sixty-day waiting period, however, the SARC refused Williams reentry into the program on the grounds that Williams's "record indicated no need for the rehabilitation programs offered there, and that [Williams] was taking prescribed pain medication, which [the SARC was] uneasy about having on the premises." (Pet'r's Br. Supp. Pet. ¶ 10.)

After the SARC denied him reentry, Williams's probation officer failed to locate a suitable alternate housing option for Williams. (Pet'r's Br. Supp. Pet. ¶ 11.) With no viable housing alternative, Williams's case was referred to the VPB. (Pet'r's Br. Supp. Pet. ¶¶ 13, 16.) The VPB revoked Williams's parole on June 19, 2000. (Resp't's Mem. ¶ 9; Fahey Aff. ¶ 5 & Encl. D, at 4.)

Williams contends that the VPB revoked his parole, and continues to deny him release on parole, "because of the 'Serious nature and circumstances of the crime.'" (Pet'r's Br. Supp. Pet. ¶ 17.) However, Williams argues that the VPB "long ago determined [him] to be suitable for parole. . . . [and that] Petitioner continues to be suitable for parole." (Pet'r's Br. Supp. Pet. ¶ 40.) Williams also contends that the VPB maintains a policy that, "[i]n the case of anyone who was

previously sentenced to death, despite that sentence having been vacated, the Parole Board's de facto policy is never to grant parole release." (Pet'r's Br. Supp. Pet. ¶ 29.)

### III. Analysis

#### A. Claim 1(a): Revocation of Parole

##### 1. Time Bar

28 U.S.C. § 2244 requires a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) states:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The VPB revoked Williams's parole on June 19, 2000. (Resp't's Mem. ¶ 9; Fahey Aff. ¶ 5 & Encl. D, at 4.) Williams filed his first state petition for a writ of habeas corpus on March

2, 2004.[10] Under the applicable one-year limitation period, Williams had until Tuesday, June 19, 2001, to file a federal petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1)(D); *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003). Williams did not file his federal habeas petition until January 30, 2009. Therefore, Claim 1(a) is time-barred unless Williams merits equitable tolling of the statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(D).

### 2. Equitable Tolling

Equitable tolling of the AEDPA's statute of limitations is "reserved for those rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). "[T]o be entitled to equitable tolling, an otherwise time-barred petitioner must present '(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.'" *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*quoting Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)).

Williams makes no valid argument as to why the Court should equitably toll the statute of limitations as to Claim 1(a). He merely argues that his "situation is unique and, as such, is not governed by the cases cited by respondent." (Pet'r's Response to Resp't's Mot. Dismiss ("Pet'r's Resp."), ¶ 14.) (Docket No. 13.) This argument does not render the application of the statute of

---

[10] Because the one-year period had already run by the time he filed his first state habeas petition, neither that petition nor his subsequent state habeas petition entitled Williams to any statutory tolling of the limitations period under 28 U.S.C. § 2244(d)(2). *See Deville v. Johnson*, No. 1:09cv72, 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010) (*citing Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)).

limitations unconscionable, and thus the Court finds that Williams does not merit equitable tolling. Accordingly, the Court will DISMISS Claim 1(a).

### B. Claim 1(b): Continuing Denial of Release on Parole

Claim 1(b) alleges a due process violation resulting from the VPB's continuing denial of Williams's release on parole. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Where government action impacts a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible . . . . not all situations calling for procedural safeguards call for the same kind of procedure").

#### 1. Williams Does Not Have a Protected Liberty Interest in Parole Release

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Franklin v. Shields*, 569 F.2d 784, 788 (4th Cir. 1977) (en banc) (noting that "a state is not obliged to provide a parole system for its prisoners"). "With no constitutional right to parole per se, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of

7

entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (*quoting Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (en banc).

To demonstrate the existence of a state-created liberty interest, a petitioner must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08cv00687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint challenged meets either prong of this threshold, a petitioner must next show that the Commonwealth of Virginia, "grants its inmates, by regulation or statute, a protected liberty interest in remaining free from that restraint." *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000); *see Greenholtz*, 442 U.S. at 10-11; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996); *Smith v. Johnson*, No. 7:08cv00514, 2008 WL 4960436, at *3 n. 2 (W.D. Va. Nov.19, 2008).

Williams alleges that Respondent continues to deny him parole, which sufficiently alleges a deprivation affecting the duration of Williams's sentence. Thus, the Court must consider whether Virginia law grants any liberty interest in parole release.[11] "A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire, or a unilateral hope." *Gaston*, 946 F.2d at 344 (citation omitted). State laws create a liberty interest only when the statute's language "'plac[es] substantive limitations on official discretion.'" *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). The United States Court of Appeals for the Fourth Circuit explained the fairly exacting nature of this requirement in *Slezak* as follows:

---

[11] Williams appears to challenge the failure of the Parole Board to release him. He does not raise his claim because the Parole Board failed to *consider* release.

8

> What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable . . . classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

*Id.* at 595.

The laws at issue here fall short of the exacting requirements for demonstrating a state-created liberty interest. The pertinent portion of the statute in effect at the time Williams was convicted in 1967 provided: "Persons sentenced to die shall not be eligible for parole." Va. Code. § 53-251 (Michie Repl. Vol. 1967). Thus, by the explicit language of the statute in effect at the time of his conviction, Williams was not eligible for consideration for release on parole. Va. Code. § 53-251(2) (Repl. Vol. 1967); (*see* Pet. 1 (noting that Williams was sentenced to death)).

In 1973, when his sentence was commuted to a term of years rather than death, Williams became eligible for consideration for release on parole. Va. Code. § 53-251 (Michie Repl. Vol. 1974). The applicable statutory language indicated that inmates "shall be eligible for parole" after serving a specified portion of the imposed sentence, thereby providing prisoners a right to be *considered* for parole. Va. Code. § 53-238 (Repl. Vol. 1967); Va. Code. § 53-238 (Repl. Vol. 1974); *Hill*, 64 F.3d at 170. However, the statutory language did not restrict the VPB's discretion as to whether to *ultimately release* an inmate on parole. *See* Va. Code. § 53-238 (Repl. Vol. 1974) (granting the parole board authority to adopt rules governing the granting of parole and conditioning release on parole upon the terms and conditions prescribed by the parole board).

The statute in effect at the time Williams became eligible for consideration for release on parole provided:

> No person shall be released on parole by the Board until it has made, or caused to be made, a thorough investigation as to the history, the physical and mental condition, and the character of the prisoner and his conduct, employment and attitude while in prison, nor until the Board has determined that his release on parole will be compatible with the interests of the prisoner and of society.

Va. Code § 53-253 (Michie Repl. Vol. 1974). In 2000, when the VPB revoked Williams's parole, the pertinent statute read:

> No personal shall be released on parole by the Board until a thorough investigation has been made into the prisoner's history, physical and mental condition and character and his conduct, employment and attitude while in prison. The Board shall also determine that his release on parole will not be incompatible with the interests of society or of the prisoner.

Va. Code § 53.1-155 (West 2000). These broad empowering statutes do not create the liberty interest in parole release necessary to support Williams's claim. *Slezak*, 21 F.3d at 595-97; *Gaston*, 946 F.2d at 344 (noting that when release on parole is discretionary, and "depends on informed predictions," a prisoner has no entitlement to parole). Indeed, the Fourth Circuit has held that Virginia law does not create a liberty interest in discretionary parole release. *See Hill v. Jackson*, 64 F.3d 163, 170-71 (4th Cir. 1995); *Gaston*, 946 F.2d at 344 ("Under Virginia law, work release, furlough and parole are all characteristically discretionary programs in which [a petitioner] could acquire no entitlement."); *Neal v. Fahey*, No. 3:07cv374, 2008 WL 728892, at *2 (E.D. Va. Mar. 18, 2008). Therefore, Williams has not demonstrated that he enjoyed a liberty interest in discretionary parole release.

### 2. Williams Received Sufficient Process with Respect to Any Liberty Interest in Parole Consideration

Although he enjoys no liberty interest in parole release, Williams enjoys a limited liberty interest in *consideration* for release on parole. *Hill*, 64 F.3d at 170; *Neal*, 2008 WL 728892, at *2. In terms of consideration for release on parole, the Fourth Circuit has held that "inmates are entitled to no more than minimal procedure," *Vann*, 73 F.3d at 522, which requires only that the parole authority furnish to the prisoner a "written statement of its reasons for denying parole." *Franklin*, 569 F.2d at 797; *see also Robinson v. Fahey*, 366 F. Supp. 2d 368, 371-72 (E.D. Va. 2005) (explaining that right to an explanation for denial of parole does not create the right to judicial review of the proffered reason for the denial). Respondent's submissions show that the VPB denied Williams parole because of the serious nature of his crimes, his prior failure under community supervision, and because it found him unlikely to comply with the conditions of parole. (Fahey Aff. Encl. B.) By giving Williams a written statement of its reasons for denying parole, the VPB complied with the minimal due process requirements. *See Vann*, 73 F.3d at 522 (*quoting Franklin*, 569 F.2d at 801); *Neal*, 2008 WL 728892, at *2. Thus, the VPB did not violate Williams's due process rights in the course of denying him parole. Accordingly, the Court will DISMISS Claim 1(b).

### C. Claim 1(c): The VPB's Alleged Policy of Denying Release on Parole to Former Death Row Inmates in Violation of the *Ex Post Facto* Clause

Williams contends that the VPB maintains a policy of refusing to grant release on parole to former death row inmates, in violation of the *Ex Post Facto* Clause.[12] (Pet'r's Br. Supp. Pet. ¶¶ 38-39; Pet'r's Resp. ¶¶ 2-4.) The United States Constitution prohibits federal and state

---

[12] Respondent denies having such a policy. (Fahey Aff. ¶ 11.) For purposes of summary judgment, the Court reads all allegations favorably to Williams.

governments from passing any *ex post facto* law. U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1. An *ex post facto* law "'makes more burdensome the punishment for a crime, after its commission.'" *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (*quoting Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). Changes to parole laws that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" violate the *Ex Post Facto* clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995). That said, "[a]s the constitutional text makes clear, the ex post facto prohibition applies to 'laws.'" *Warren v. Baskerville*, 233 F.3d 204, 207 (4th Cir. 2000) (*citing United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992)). "A change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws." *Id.* (*citing Ellen*, 961 F.2d at 465).

Claim 1(c) cannot prevail. Even presuming the Virginia parole policy Williams challenges exists in the manner he alleges,[13] Williams fails to show that any change in that policy could violate the *Ex Post Facto* Clause because what he alleges constitutes an administrative

---

[13] Claim 1(c) stands on shaky factual ground. The Supreme Court of Virginia properly dismissed Williams's first state habeas petition as frivolous. (Resp't's Mem. Ex. A, *Williams v. Dir., Dep't of Corr.*, No. 040443 (Va. Sup. Ct. May 25, 2004).) Williams has proffered no evidence to this Court to support his claim that Respondent denies parole release to all former death row inmates. Indeed, Williams was released on parole despite having been a former death row inmate.

Moreover, even presuming a new policy exists, Respondent's submissions clearly indicate that it gave Williams individual consideration. Williams was denied parole for at least three separate reasons, unrelated to whether he spent time on death row: the serious nature of his crimes, his prior failure under community supervision, and because the VPB found him unlikely to comply with the conditions of parole. (Fahey Aff. ¶ 6 (describing how the VPB considered Williams for parole as recently as 2008 but denied him release on parole "based on the serious nature and circumstances of his crimes and his prior failures under community supervision"); Fahey Aff. Encl. B.) The record shows individual consideration of the factual circumstances particular to Williams. This could provide an independent basis for dismissal of Claim 1(c).

policy and not a legislative rule with the force of law. The Supreme Court has found that a retroactively applied change to parole policy may violate the *Ex Post Facto* Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." *Garner v. Jones*, 529 U.S. 244, 251 (2000). "[T]he Fourth Circuit has interpreted *Garner* to apply only to parole regulations that are legislative rules rather than merely changes in 'an administrative *policy* that was in effect at the time of a criminal's underlying offenses.'" *Lyons v. U.S. Parole Comm.*, No. 3:08cv342, 2009 WL 211583, at *3 (E.D. Va. Jan. 28, 2009) (*citing Warren*, 233 F.3d at 207) (emphasis added); *Ellen*, 961 F.2d at 465; *Prater v. U.S. Parole Comm'n*, 802 F.2d 948, 951 (7th Cir. 1986) (en banc)); *see also United States v. Restrepo-Suares*, 516 F. Supp. 2d 112, 117 (D.D.C. 2007) (discussing circuit split on whether *Garner* applies to all parole regulations or only legislative rules).

Legislative rules "ha[ve] the force of law." *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989) (citing cases). Legislative rules stand in contrast with interpretive rules, which do not implicate the *Ex Post Facto* clause. *Ellen*, 961 F.2d at 465. "'[I]nterpretive rules simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties.'" *Id.* (alteration in original) (*quoting Jerri's Ceramic Arts, Inc*, 874 F.2d at 207). They are "guides, and not laws: guides may be discarded where circumstances require; laws may not." *Prater*, 802 F.2d at 954 (internal quotations omitted). For example, in *Prater*, the fact that the United States Parole Commission retained the discretion to overrule the federal parole guidelines and grant or deny parole led the United States Court of Appeals for the Seventh Circuit to conclude that the federal parole guidelines did not have the force of law. *Id.*

"Virginia courts have made clear that the Virginia Parole Board is 'given absolute discretion in matters of parole.'" *Robinson*, 366 F. Supp. 2d at 371 (*quoting Garrett v. Commonwealth*, 415 S.E.2d 245, 247 (1992)). This Court has ruled that the Parole Board's parole regulations do not "impinge[] upon the absolute discretion of the Board when acting on parole applications." *James v. Robinson*, 863 F. Supp. 275, 277 (E.D. Va. 1994). Given the breadth of the Parole Board's discretion, Williams's allegation of the existence of an unofficial policy to deny parole to former death row inmates does not suggest that the policy, even if extant, has the force of law. Accordingly, the Court will DISMISS Claim 1(c).

## IV. Certificate of Appealability

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Williams is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

## V. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss will be GRANTED. (Docket No. 8.) The Petition will be DENIED. (Docket No. 1.) A COA will be DENIED.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3-3-10